B0606

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FILED
APR 26 2022
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 22-115 |
| v. | (18 U.S.C. §§ 1349 and 1956(h)) |
| THIEN PHUC TRAN<br>TON HUYNH BUI | [UNDER SEAL] |

8:22mj00350-DUTY

## INDICTMENT

The grand jury charges:

### COUNT ONE

At all times material to this Indictment:

### INTRODUCTION

1. The defendants THIEN PHUC TRAN and TON HUYNH BUI were residents of California. TRAN and BUI were brothers-in-law.

2. LP Logistics was a registered business associated with the defendant THIEN PHUC TRAN.

3. An individual known to the grand jury as J.K., age 69, was a resident of the Western District of Pennsylvania.

4. An individual known to the grand jury as C.S., age 83, was a resident of the Western District of Pennsylvania.

5. An individual known to the grand jury as J.G., age 50, was a resident of the Western District of Pennsylvania.

## THE WIRE FRAUD CONSPIRACY

6. From at least in and around December 2020, and continuing thereafter to at least in and around December 2021, in the Western District of Pennsylvania and elsewhere, the defendants, THIEN PHUC TRAN and TON HUYNH BUI, and other individuals and entities known and unknown to the grand jury, engaged in a conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343.

## PURPOSE OF THE CONSPIRACY

7. The purpose of the conspiracy was for the defendants, THIEN PHUC TRAN and TON HUYNH BUI, and co-conspirators known and unknown to the grand jury, including individuals residing outside the United States in Vietnam and elsewhere (collectively, the "co-conspirators"), to obtain and convert to their personal use millions of dollars in property belonging to victims located throughout the United States, including elderly individuals, by inducing the victims to provide access to their money through the use of various false representations, including, among others, that the victims' bank accounts had been compromised and that the victims needed to safeguard their personal funds by transferring such funds to bank accounts controlled by the co-conspirators, including accounts opened using the personally identifiable information (PII) of additional victims.

## MANNER AND MEANS OF THE CONSPIRACY

8. It was part of the conspiracy that co-conspirators identified and contacted potential victims through various means and instrumentalities of interstate commerce, including via pop-up messages appearing on the victims' computers, email communications, and telephone calls.

9. It was further part of the conspiracy that co-conspirators falsely represented to victims that funds in the victims' bank accounts or other financial accounts had been compromised and thereafter persuaded them to move funds to accounts controlled by the co-conspirators.

10. It was further part of the conspiracy that, in certain instances, co-conspirators caused victims to receive pop-up messages on their computers purporting to be from one of various reputable technology companies, which messages instructed the victims to contact a telephone number controlled by the co-conspirators.

11. It was further part of the conspiracy that once victims contacted co-conspirators at the telephone number specified in the pop-up message, co-conspirators would then convince the victims that their bank or other financial accounts had been compromised.

12. It was further part of the conspiracy that, in the guise of attempting to assist the victims in keeping their money safe, co-conspirators would obtain the consent of victims to install remote-access software on the victims' computers, which provided co-conspirators with control over the victims' computers.

13. It was further part of the conspiracy that after co-conspirators gained control of the computers of victims and caused them to transfer funds to bank accounts controlled by co-conspirators, the co-conspirators converted the victims' (hereinafter, the "loss victims") funds, in whole and in part, to the co-conspirators' personal benefit.

14. It was further part of the conspiracy that, in part as a means to conceal their activity, co-conspirators obtained the PII of additional victims (hereinafter, the "PII victims"), without such victims' knowledge, and used the victims' PII to set up bank accounts and email accounts in the PII victims' names that co-conspirators could control.

15. It was further part of the conspiracy that co-conspirators used bank accounts in the names of PII victims to receive and transfer the loss victims' money to further the conspiracy and for the personal benefit of co-conspirators.

16. It was further part of the conspiracy that co-conspirators created email accounts in the names of PII victims and used such email accounts in connection with the co-conspirators' management and control of bank accounts opened in the names of other PII victims.

17. It was further part of the conspiracy that co-conspirators caused loss victims to send their money to accounts controlled by the co-conspirators, including accounts set up using the PII of the PII victims, as well as accounts in the names of shell companies set up and controlled by co-conspirators.

18. It was further part of the conspiracy that co-conspirators instructed loss victims to send funds to cryptocurrency wallets controlled by co-conspirators.

19. It was further part of the conspiracy that, after gaining access to and control over millions of dollars of loss victims' funds, including through the use of accounts in the name of PII victims, co-conspirators would transfer the stolen funds multiple times to additional accounts controlled by co-conspirators, use the funds to purchase commercially available debit cards, including Green Dot cards, or otherwise use the stolen funds for their personal benefit, including to pay co-conspirators' personal credit card bills and make mortgage payments.

20. It was further part of the conspiracy that co-conspirators transferred loss victims' funds from within the United States to locations outside the United States, including Vietnam and India.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

### Victim J.K.

21.  On or about July 13, 2021, J.K received a message on J.K.'s computer purporting to be from a reputable technology company and instructing J.K. to call a telephone number. J.K. complied with the directive and spoke to a co-conspirator claiming to work for the technology company. In response to the co-conspirator's false representations about an overpayment and refund from the technology company, J.K. granted the co-conspirator remote access to J.K.'s computer.

22.  On or about July 13, 2021, the co-conspirator caused J.K. to initiate three fund transfers totaling $2,500 from J.K.'s account at PNC Bank, in the Western District of Pennsylvania, to a bank account at BMO Harris outside Pennsylvania in the name of an individual with the initials C.H. and associated with a particular email address containing C.H.'s last name. J.K. had never heard of C.H. and had no pre-existing relationship with anyone of this name.

23.  On or about August 3, 2021, a message was sent from an email account controlled by defendant THIEN PHUC TRAN to an email account controlled by defendant TON HUYNH BUI that identified the bank name BMO Harris, the email address related to C.H., a username and password for the bank account in the name of C.H., and C.H.'s telephone number. Control of the bank account at BMO Harris in the name of C.H. permitted co-conspirators to access funds fraudulently obtained from J.K. and any other monies in the account.

### Victim C.S.

24.  On or about October 6, 2021, C.S. received a pop-up message on C.S.'s computer purporting to be from a reputable technology company and instructing C.S. to call a telephone

number. C.S. complied with the directive and spoke to a co-conspirator claiming to work for the technology company and that C.S.'s computer had been compromised.

25. On or about October 6, 2021, the co-conspirator with whom C.S. initially spoke transferred C.S. to another co-conspirator, who identified himself as "Alan Maxwell" and who explained to C.S. that C.S.'s identity had been compromised and that C.S. needed to move funds out of his retirement accounts into C.S.'s account at First National Bank and then to external bank accounts for safe keeping until further notice. "Maxwell" then caused C.S. to install remote access software on C.S.'s computer, which allowed co-conspirators to remotely access and control C.S.'s computer.

26. On or about October 22, 2021, "Maxwell" directed C.S. to photograph and scan C.S.'s Pennsylvania driver's license and create a new Gmail account in C.S.'s name.

27. Between on or about October 12, 2021, and on or about November 19, 2021, co-conspirators caused C.S. to liquidate C.S.'s retirement accounts through the following seven wire transactions totaling $1,288,073.00, which C.S. initiated from C.S.'s First National Bank account in the Western District of Pennsylvania and transferred to accounts outside Pennsylvania that "Maxwell" identified and that were controlled by co-conspirators:

| Date | Wire Amount | Beneficiary Account | Account Number |
|---|---|---|---|
| 10/12/2021 | $63,000.00 | PMDC LLC | xxxxxxxx0790 |
| 10/22/2021 | $98,000.00[1] | Payward Ventures | xxxxxx3075 |
| 10/28/2021 | $125,000.00 | Prime Trust LLC | xxxxxx6223 |
| 10/30/2021 | $278,000.00 | Prime Trust LLC | xxxxxx6223 |

---

[1] This wire transfer was blocked by Payward Ventures.

| 11/10/2021 | $293,680.00 | Prime Trust LLC | xxxxxx6223 |
| 11/17/2021 | $274,500.00 | Bittrex INC | xxxxxx7029 |
| 11/19/2021 | $155,893.00 | Bitstamp USA | xxxxxx9398 |

### Victim J.G.

28.    On or about August 8, 2021, co-conspirators opened account number ending in 0689 at Wells Fargo (the "Wells Fargo Account") using PII associated with J.G. The account opening document was signed via an electronic signature with J.G.'s name. J.G. did not authorize opening this account and was unaware it had been opened.

29.    Between on or about August 16, 2021, and on or about and September 13, 2021, co-conspirators caused incoming transfers into the Wells Fargo Account from loss victims throughout the United States and Canada. During this time, co-conspirators re-routed such funds out of the Wells Fargo Account to accounts at other financial institutions that co-conspirators also controlled.

30.    On or about August 16, 2021, co-conspirators caused a $3,000 transfer from the Wells Fargo Account to a bank account in the name of LP Logistics at California International Bank.

31.    In and around August 2021, the defendant TON HUYNH BUI received a total of $9,000 via a series of transfers from the Wells Fargo Account to various accounts controlled by BUI.

32.    Between on or about August 12, 2021, and on or about September 2, 2021, co-conspirators accessed the Wells Fargo Account on multiple occasions from an IP address associated with the defendants THIEN PHUC TRAN and TON HUYNH BUI.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

The grand jury further charges:

33. The allegations set forth in paragraphs 1 through 32 of this Indictment are incorporated herein by reference, as though set forth at length more fully herein.

34. From at least in and around December 2020, and continuing thereafter to at least in and around December 2021, in the Western District of Pennsylvania and elsewhere, the defendants, THIEN PHUC TRAN and TON HUYNH BUI, did knowingly, intentionally, and unlawfully conspire together with one another, and with persons both known and unknown to the grand jury, to commit certain offenses against the United States, that is:

   a. To knowingly conduct and attempt to conduct financial transactions involving property representing the proceeds of specified unlawful activity, knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

   b. To knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and which property was, in fact, derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957(a).

35. It is further alleged that the specified unlawful activity referenced in the preceding paragraph is wire fraud, in violation of 18 U.S.C. § 1343.

All in violation of Title 18, United States Code, Section 1956(h).

8

## FORFEITURE ALLEGATIONS

36. The grand jury re-alleges and incorporates by reference the allegations contained in Counts One and Two of this Indictment for the purpose of alleging criminal forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

37. The United States hereby gives notice to the defendants charged in Count One that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including, but not limited to, the following described property:

> All Ethereum (ETH) and Bitcoin (BTC) maintained in or on behalf of Account ID ending in 0564 at cryptocurrency exchange Binance.

38. The United States hereby gives notice to the defendants charged in Count Two that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property involved in each offense of conviction in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, and all property traceable to such property, including, but not limited to, the following:

> All Ethereum (ETH) and Bitcoin (BTC) maintained in or on behalf of Account ID ending in 0564 at cryptocurrency exchange Binance.

39. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendants THIEN PHUC TRAN and TON HUYNH BUI up to the value of the forfeitable property described above.

A True Bill,

FOREPERSON

CINDY K. CHUNG
United States Attorney
PA ID No. 317227

ROBERT S. CESSAR
Assistant United States Attorney
PA ID No. 47736

STEPHEN R. KAUFMAN
Assistant United States Attorney
PA ID No. 42108

10